**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MAIN LINE EXPO INC.,**<br>            *Plaintiff,*<br><br>        **v.**<br><br>**TELUGU ASSOCIATION OF NORTH AMERICA,**<br>            *Defendant.* | **Civil No. 24-1030** |

**MEMORANDUM**

**Costello, J.**                                                                                            **July 17, 2026**

Plaintiff Main Line Expo Inc. is an events contractor.  ECF No. 30-1 ¶ 6.  Defendant

Telugu Association of North America is a not-for-profit organization that aims to identify and

address the social, cultural, and educational needs of the North American Telugu community.  *Id.*

¶¶ 1-2.  Plaintiff contracted with Defendant to provide event services for Defendant's biannual

convention at the Philadelphia Convention Center.  ECF No. 13 ¶ 6.  Plaintiff alleges that

Defendant knowingly misrepresented the amount of work required for the convention during the

planning phase and significantly expanded the scope of work during the convention.  *Id.* ¶ 8.  As

a result, Plaintiff provided significant additional labor and materials to produce the event.  *Id.* ¶¶

15, 43.

In its Second Amended Complaint, Plaintiff alleged claims for: (1) breach of contract; (2)

fraud in the inducement; (3) violation of the Contractor and Subcontractor Payment Act; (4)

tortious interference with contractual relations; and (5) in the alternative, equitable relief under

quantum meruit and unjust enrichment.  *Id.* ¶¶ 67, 75, 103-108, 112-114, 119-120, 124-128, 132-

134.

Defendant moved for summary judgment arguing that Plaintiff failed to produce evidence to support its claims.  *See generally* ECF No. 30.  For the reasons that follow, the Court will grant Defendant's motion.

## I.    FACTUAL & PROCEDURAL BACKGROUND

Under the contract between the parties, Plaintiff agreed to provide event services for Defendant's biannual convention at the Pennsylvania Convention Center.  ECF No. 30-1 ¶¶ 3-4, 13.  The convention was held from July 5 to July 10, 2023.  *Id.* ¶ 10.  The contract called for Plaintiff to provide materials and labor totaling $129,014.18.  *Id.* ¶ 13; ECF No. 30-4 at 5.  However, the contract did not state the total cost of performance.  *See id.*  All contractors are required to use the union labor services of Elliot-Lewis Convention Services, LLC ("Elliot-Lewis"), for events at the convention center.  ECF No. 32-4 ¶ 32.  Accordingly, the contract stated that "[a]ll labor costs are estimated based on current TANA project scope" and "[a]ll labor, scheduled through Elliot Lewis, is billed on a pass-through basis."  ECF No. 30-4 at 4.

Defendant paid Plaintiff $159,740.44 for its services.  ECF No. 30-1 ¶ 18.  Plaintiff claims that Defendant owes it an additional $315,000 for the labor and materials.  ECF No. 32-4 ¶ 55.  Plaintiff asserts that Defendant knowingly misrepresented the scope of work required for the convention.  *Id.* ¶ 31.  For example, on the first day of the convention, Plaintiff learned for the first time that it would have to provide labor and materials to support the event across an area almost six-fold larger than initially agreed upon.  *Id.* ¶ 37.  Defendant allegedly made many other misrepresentations to Plaintiff, including: (1) stating that the work required in one of the areas would be two man-hours when it ended up requiring four hundred plus man-hours; (2) not disclosing the existence of a decorator subcontractor until two days before the event; (3) stating that the decorator's items could be unloaded by one worker in four hours when the decorator's

items actually contained two tractor trailers and multiple box trucks and required the labor of eight to sixteen men over multiple days; (4) representing that two trailers worth of water would need to be unloaded and distributed on the first day of the convention while in reality, eight tractor trailers worth of water arrived over multiple days; (5) performing outside work that violated the building code, thus requiring a large crane, three additional carts and two additional forklifts to fix the violations; (6) representing that no electricians would be required to conduct the event then insisting that lighting was necessary such that the electricians' union was required to provide labor; (7) stating that the convention would end by 11:59 p.m. each night when it did not end until 2:00 a.m. each day; (8) representing that the exhibitors would need two hours to set up when it actually took twelve hours. *Id.* ¶¶ 38-46.

Additionally, Plaintiff claims that Defendant attempted to circumvent the requirement to use Elliot-Lewis union labor by doing work themselves late at night when they thought nobody was watching. *Id.* ¶ 47. At the end of the convention, Plaintiff alleges that Defendant failed to remove all their items from the Convention Center loading area, and as a result, Plaintiff stored Defendant's items in its warehouse. *Id.* ¶ 53.

Ultimately, Plaintiff claims it is owed a greater balance than the amount specified in the contract because of the significant additional labor needed to produce Defendant's event. *See id.* ¶ 49. Plaintiff asserts that Defendant approved each of the additional charges for labor from Elliot-Lewis in writing as they were incurred during the convention, including overtime charges. *Id.*

Moving for summary judgment, Defendant contends that it paid what it owed for the convention and that it did not authorize any additional expenses. ECF No. 30-1 ¶ 29. Defendant further argues that Plaintiff has failed to produce any evidence supporting its claims. ECF No.

30-1 at 5.  Plaintiff did not conduct any discovery in this case.  *Id.*  It has not issued any written discovery requests, produced a single document, or taken a deposition.  *Id.*  The record consists of only four documents: an affidavit by Plaintiff's President; the contract at issue; an invoice to Defendant issued five months after the convention took place; and a planning document that Defendant used to specify the scope of work to Plaintiff prior to the event.  ECF Nos. 32-3, 13-2, 13-3, and 13-4.

Plaintiff opposed the motion, arguing that although it has not conducted any discovery, the four documents it has provided are sufficient to establish that genuine issues of material fact exist on each of its claims.  ECF No. 32-4 at 5.

## II.    LEGAL STANDARD

Summary judgment is appropriate if the movant shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "To defeat a motion for summary judgment, there must be a factual dispute that is both material and genuine."  *Bennett v. SEPTA*, 23cv1271, 2024 WL 404959, at \*6 (E.D. Pa. Feb. 2, 2024), *aff'd sub nom.*, *Bennett v. Se. Pa. Transp. Auth.*, 24cv1376, 2025 WL 1248815 (3d Cir. Apr. 30, 2025) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)).  "When the movant is the defendant, they have the burden of demonstrating that the plaintiff 'has failed to establish one or more essential elements of her case.'"  *Id.* (quoting *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013)).  The Court does not weigh evidence or make credibility determinations at the summary judgment stage.  Rather, it simply determines "whether there is a genuine issue for trial."  *Id.* (citing *Anderson*, 477 U.S. at 249).

## III.    ANALYSIS

Plaintiff's failure to conduct discovery is fatal to its case.  At summary judgment, allegations lacking in evidentiary support are insufficient to sustain a claim.  *See Anderson*, 477 U.S. at 248 ("[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.") (quoting Fed. R. Civ. P. 56(e)) (cleaned up). Without the benefit of discovery, Plaintiff has not made out the essential elements of any its claims.  Accordingly, summary judgment is appropriate.

### A.    Plaintiff's Breach of Contract Claim and Claim Under the Contractor and Subcontractor Payment Act Fail.

"To state a breach of contract claim under Pennsylvania law, a plaintiff must plead '(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages.'"  *Cosby v. Am. Media, Inc.*, 197 F. Supp. 3d 735, 739 (E.D. Pa. 2016) (quoting *Pennsy Supply, Inc. v. Am. Ash Recycling Corp. of Pa.*, 895 A.2d 595, 600 (Pa. Super. 2006)).

Here, Plaintiff failed to establish that Defendant breached a duty imposed by the contract. As an initial matter, Plaintiff does not identify which term of the contract was allegedly breached.  Plaintiff only asserts that Defendant "failed to pay the full balance due and owing for the additional labor and materials provided."  SAC ¶ 67.  The relevant portions of the contract state:

> All Labor costs are estimated based on TANA current project scope . . . . All labor, scheduled through Elliot Lewis, is billed on a pass-through basis.  MLE will perform daily reconciliation within 24 hours of each day's end and made [*sic*] available for your reference.  All credit/overage due back to TANA Convention or balances due to MLE will process within 72 hours post event.

ECF No. 30-4 at 4.

5

Plaintiff has not evinced a breach of the above contractual terms.  The record lacks evidence of Plaintiff's daily reconciliations at each day's end of the TANA convention so the Court cannot ascertain what additional labor charges, if any, Defendant incurred.  In its Response, Plaintiff asserts there are "genuine issues of material fact" with respect to the "terms set forth by the contract, and the invoices for the actual materials and labor rendered."  ECF No 32-4 at 18.  Yet, Plaintiff has not produced any contemporaneous invoices showing the actual materials and labor rendered.[1]  A reasonable jury could not conclude that a breach of contract occurred based on the evidence in the record.  Accordingly, summary judgment is granted in favor of Defendant on Plaintiff's breach of contract claim.

Plaintiff's claim under the Contractor and Subcontractor Payment Act ("CASPA") is contingent upon the Court's finding that Defendant wrongfully withheld payment from Plaintiff.  CASPA "entitles a contractor or subcontractor to prompt payment from the party with whom the contractor or subcontractor has contracted in accordance with the provisions of a contract, and allows for penalties when the party wrongfully withholds payment."  *C.J. Hughes Constr. Co. Inc. v. EQM Gathering OPCO, LLC*, 22cv3391, 2024 WL 1652341, at *1 (3d Cir. Apr. 17, 2024) (internal quotations omitted); 73 Pa. Cons. Stat. §§ 504, 507, 512(a).  As explained *supra*, Plaintiff has not demonstrated that Defendant breached its contract and wrongfully withheld

---

[1] Exhibit B to Plaintiff's Second Amended Complaint is an invoice to Defendant dated December 21, 2023, more than five months after the TANA convention took place.  The invoice contains a line item for "Misc Adjustments, Union Requirements" totaling $92,542.00.  ECF No. 13-3 at 6. The line item notes: "Please reference Elliott Lewis's timesheets for documentation."  *Id.* Plaintiff has not produced Elliot-Lewis's time sheets and therefore has not adduced evidence demonstrating that Defendant failed to pay for additional labor that it utilized.

payment.  Therefore, Plaintiff has failed to prove the essential elements of a claim under CASPA.[2]

> **B.** **Plaintiff's Fraud in the Inducement and Tortious Interference with Business Contracts Claims Fail.**

Based on the record evidence, Plaintiff is unable to prove any facts relating to Defendant's state of mind.  Consequently, Plaintiff has failed to establish the essential elements of fraud in the inducement and tortious interference.

Under Pennsylvania law, the elements of fraud in the inducement are as follows: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Eigen v. Textron Lycoming Reciprocating Engine Div.*, 874 A.2d 1179, 1185 (Pa. Super. 2005) (cleaned up).  "A plaintiff bringing a fraudulent inducement claim typically must show deception by the defendant, and must prove all six elements of fraudulent inducement by clear and convincing evidence." *Paramount Fin. Commc'ns, Inc. v. Broadridge Inv. Commc'ns Sols., Inc.*, 684 F. Supp. 3d 316, 337 (E.D. Pa. 2023) (citation omitted).

Plaintiff offers the affidavit of Michael Gilason, President of Main Line Expo Inc., in support of its fraud in the inducement claim.  ECF No. 32-4 at 19.  Gilason avers that Defendant "knowingly underrepresented the amount of work required" during the planning phase of the TANA convention.  ECF No. 32-3 ¶ 5.  He explains that Defendant made a last-minute request to

---

[2] Defendant argues that CASPA does not apply to its contract with Plaintiff because the contract is for the provision of event services, not construction.  ECF No. 30-1 at 15.  The Court does not reach this issue because Plaintiff does not have a cognizable claim under CASPA on the record submitted.

expand the area to be supported for the convention approximately six-fold, resulting in additional labor and material requirements that he "worked tirelessly" to accommodate. *Id.* ¶ 11. At most, these sworn statements demonstrate that Defendant knowingly made a material, false representation. Nothing in Gilason's affidavit or elsewhere in the record amounts to evidence that Defendant made such misrepresentations "with the intent of misleading another into relying on it."[3] *Eigen*, 874 A.2d at 1185 (citation omitted). Therefore, Plaintiff has failed to meet the fourth element of a fraud in the inducement claim.

To prove a tortious interference with business contracts claim, Plaintiff must show: (1) the existence of a contractual relationship between the complainant and a third party; (2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship; (3) the absence of a privilege or justification on the part of the defendant; and (4) the occasioning of actual damage as a result of defendant's conduct. *Rice Drilling B, LLC v. Scott*, 325 A.3d 663, 677 (Pa. Super. 2004) (cleaned up) (citation omitted). Plaintiff contends that Defendant interfered with Plaintiff's contractual relationships with the Pennsylvania Convention Center and Elliot-Lewis by circumventing rules that required the use of union labor for the convention. ECF No. 32-4 at 25; ECF No. 32-3 ¶ 6. The Gilason affidavit avers that Defendant harmed Plaintiff's contractual relationship with the Convention Center and Elliot-Lewis because "[a]s a direct result of the nonpayment by TANA, Main Line Expo's right of entry to the Pennsylvania Convention Center has been suspended since October 30, 2023" and Main Line faces legal action from Elliot-Lewis for nonpayment. *See* ECF No. 32-3 ¶ 31. Plaintiff

---

[3] In any event, statements in Gilason's affidavit alone are insufficient to prove Defendant's state of mind. A nonmoving party cannot defeat summary judgment by "replac[ing] conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. Nat'l. Wildlife Fed'n.*, 497 U.S. 871, 888 (1990) (citing *Anderson*, 477 U.S. at 249).

concedes, however, that it has not presented evidence of Defendant's intent to harm Plaintiff by interfering with a contractual relationship. *See* ECF No. 32-4 at 26 ("TANA's motives cannot be fully evaluated at this stage."). By its own admission, then, Plaintiff fails to meet the second element of a tortious interference with contract claim.

Simply put, Plaintiff cannot prove Defendant's intent by relying solely on the contract and the Gilason affidavit, and without the benefit of any additional discovery. Failure to adduce evidence supporting an essential element of a claim "renders all other facts immaterial" at summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323. Accordingly, summary judgment must be granted in favor of Defendant on Plaintiff's fraud in the inducement and tortious interference with business contracts claims.

### C.      Plaintiff's Equitable Claims Fail.

Plaintiff alleged equitable claims for quantum meruit and unjust enrichment in the alternative. "Claims for quantum meruit and unjust enrichment presuppose the absence of a valid contract." *Mextel, Inc. v. Air-Shields, Inc.*, 01cv7308, 2005 WL 226112, at *40 (E.D. Pa. Jan. 31, 2005) (citing *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 1000 (3d Cir. 1987) (applying Pennsylvania law)). Neither party in this case has argued that the contract at issue is invalid or should be set aside on any basis. Even if the Court were to conclude a contract did not exist, Plaintiff has not provided documentation or deposition testimony to support its claim that Plaintiff rendered materials and labor to Defendant that were unaccompanied by payment of value. *See supra* Part III.A. A reasonable jury could not find that Plaintiff has made out equitable claims for quantum meruit or unjust enrichment. Summary judgment is granted in favor of Defendant on both of these counts.

9

## IV.    CONCLUSION

Because Plaintiff has failed to adduce evidence supporting its claims, the Court will grant

Defendant's motion for summary judgment.  An appropriate Order will follow.


BY THE COURT:


MARY KAY COSTELLO
United States District Judge